\*\*\*NOT FOR PUBLICATION\*\*\*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BERTIN B.-S., | Civil Action No. 20-4749 (CCC) |
| Petitioner, | |
| v. | OPINION |
| WARDEN ORLANDO RODRIGUEZ, | |
| Respondent. | |

**CECCHI, District Judge:**

Presently before the Court is the petition for a writ of habeas corpus of Petitioner Bertin B.-S. ("Petitioner") filed pursuant to 28 U.S.C. § 2241. ECF No. 1. Following an order to answer, the Government filed a response to the petition (ECF No. 5), to which Petitioner replied (ECF No. 6). For the following reasons, Petitioner's habeas petition is denied without prejudice.

**I. BACKGROUND**

Petitioner is a thirty-one year old native and citizen of Mexico. ECF No. 5-7 at 1. Petitioner first attempted to enter the United States illegally on October 1, 2006, but Border Patrol Agents arrested him at the border and he was voluntarily returned to Mexico. Id. at 2. Petitioner crossed the border illegally again later in 2006 and remained in the United States. Id. On April 11, 2019, Petitioner was convicted of disorderly conduct and sentenced to one year of probation. Id. at 3. As a result of this conviction, Petitioner was taken into immigration detention on October 16, 2019. Id. at 2. Since October 2019, Petitioner has remained in detention at the Elizabeth Contract Detention Facility pursuant to the Government's discretionary detention authority under 8 U.S.C.

§ 1226(a).[1] During this detention, Petitioner sought and received a bond hearing, but he was denied bond by an immigration judge on November 25, 2019 as he was found to be a danger to the community. ECF No. 5-8. Petitioner later filed a request for a bond redetermination, but that request was denied as the immigration judge found no material change in circumstances. *See* ECF No. 6 at 3. Petitioner filed a request for release on humanitarian parole due to the COVID-19 crisis, which was also denied. ECF No. 1 at 8. On January 22, 2020, Petitioner was ordered removed by an immigration judge. ECF No. 5 at 6. Petitioner has appealed both his denial of bond and his removal order, and both appeals are currently pending before the Board of Immigration Appeals. Id.; ECF No. 1 at 4.

At the time of his arrest by immigration officers in October 2019, Petitioner claimed to be in good health. ECF No. 5 at 6. In his reply brief, however, Petitioner asserts that he "has been showing symptoms which could be signs of an infection, but could also be possible early indicators of COVID-19" including "reddened eyes, sore throat, [and] upper abdominal pain." ECF No. 6 at 2. Petitioner further asserts that he was seen by medical staff at the facility following his complaints and was given ibuprofen to aid him with his pain. Id. Petitioner has presented the Court with no documentation or further information regarding these alleged symptoms, nor any medical reports identifying these symptoms as potential indications of COVID-19 infection.

## II. DISCUSSION

### A. Legal Standard

A federal court has jurisdiction over a habeas petition brought under 28 U.S.C. § 2241(c) if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490

---

[1] Petitioner and his partner have a son who was born in the United States and suffers from a "congenital development issue." ECF No. 1 at 3.

(1989). This Court has jurisdiction over Petitioner's claims that his continued detention violates his due process rights because he is presently detained within this Court's jurisdiction by a custodian in this Court's jurisdiction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494–95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

In his habeas petition and reply brief, Petitioner presents three potential claims for relief. First, he asserts that the denial of his bond hearing and the denial of humanitarian parole were improper because he is neither a flight risk nor danger to the community. Second, Petitioner asserts that his current conditions of confinement amount to improper punishment in light of COVID-19 and therefore violate his right to due process. Finally, Petitioner asserts that his continued detention during the COVID-19 pandemic amounts to deliberate indifference to his medical needs in violation of his rights under the Due Process Clause. This Court will address each claim in turn.

**1. Petitioner's continued detention under 8 U.S.C. § 1226(a) is lawful.**

Petitioner asserts that his ongoing detention is unlawful without a bond hearing before this Court where the Government bears the burden of proof. Petitioner is currently detained pursuant to the Government's discretionary detention authority under 8 U.S.C. § 1226(a). Pursuant to Section 1226(a), the Government is authorized to detain or release on parole or bond an alien subject to removal proceedings pending a final order of removal. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 838 (2018). In those cases in which the Government chooses to detain an alien, the alien is free to request a bond hearing before an immigration judge. *See, e.g.*, *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278–79 (3d Cir. 2018). At a bond hearing under the statute, the alien bears the burden of proving that he is neither a danger to the community nor a flight risk. *Id.* at 279. Where the immigration judge denies bond and the underlying bond hearing

was not otherwise held in a fashion violative of due process, "[n]o court may set aside any action or decision taken by [the immigration judge] . . . . regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." *Id.* (quoting 8 U.S.C. § 1226(e)).  Neither an alien's dissatisfaction with the result of his bond hearing nor the passage of more than a year of detention is sufficient to warrant either a *de novo* bond hearing or a shift of the burden of proof. *Id.* at 276–80.  The proper mechanism for challenging the merits, rather than the procedure, of a bond hearing is an appeal before the Board of Immigration Appeals, and discretionary detainees are free to seek a redetermination of their custody status at any time based on materially changed circumstances. *See* 8 C.F.R. § 236.1(d); 8 C.F.R. § 1003.19.

In this matter Petitioner received both an initial bond hearing and a bond redetermination hearing. In both instances, an immigration judge denied bond.  Petitioner does not allege any constitutional defect in those hearings, but instead asserts his disagreement with the immigration judge's findings that Petitioner was a danger to the community and that COVID-19 did not materially change Petitioner's circumstances sufficiently to warrant a grant of bond.  This Court, however, has no jurisdiction or authority to second guess the merits determinations of an immigration judge. 8 U.S.C. § 1226(e).  Likewise, to the extent that Petitioner believes he is entitled to a bond hearing where the Government bears the burden of proof, *Borbot* is clear that requiring aliens to bear the burden in Section 1226(a) bond and bond redetermination hearings comports with due process.  Accordingly, Petitioner's continued detention under Section 1226(a) is lawful.[2]

---

[2] Petitioner also asserts that he was improperly denied release on humanitarian parole.  This Court, however, has no jurisdiction to review the Government's decision to deny humanitarian parole. *See, e.g., Doe v. Rodriguez*, No. 17-1709, 2018 WL 620898, at *8 *D.N.J. Jan. 29, 2018).

**2. Petitioner has failed to show that he has been subjected to overly punitive conditions of confinement or that the facility and its staff have been deliberately indifferent to his needs.**

In his remaining arguments, Petitioner asserts that he should be entitled to release on bond because the current conditions under which he is confined amount to punishment in violation of the Due Process Clause in light of the COVID-19 pandemic, or because the facility in which he is detained has been deliberately indifferent to his medical needs in light of the danger posed by COVID-19. Petitioner has not identified any medical issues or pre-existing conditions that would place him at high risk of serious complications from COVID-19. In his reply brief, the only medical issues Plaintiff specifically raises are his alleged reddened eyes, sore throat, and abdominal pain, which he readily admits could be symptoms of an unrelated illness and for which he was given ibuprofen, a medication which treats both pain and fever.

For an immigration detainee to state a claim for relief based on his medical needs under the Due Process Clause, he must show both that he has a sufficiently serious medical need and that jail officials have been deliberately indifferent to that need. *See, e.g.*, *Parkell v. Morgan*, 682 F. App'x 155, 159–60 (3d Cir. 2017); *King v. Cty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Petitioner's claim can only succeed if he can show that Respondents acted with deliberate indifference to that need, *i.e.*, that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In determining whether a detainee's conditions of confinement violate his substantive due process rights, "the proper inquiry is whether those conditions amount to punishment of the detainee." *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Third Circuit has arrived at a two-part test for this inquiry, under which the court "must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these

purposes." *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) (citing *Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir. 1983)).

As Petitioner claims in light of COVID-19 both that the facility has been deliberately indifferent to his medical needs and that his current conditions of confinement are punitive, the steps the facility has taken to mitigate or alleviate the threat of COVID-19 are directly relevant to both claims. Furthermore, in a certification provided by the Government, the doctor who oversees medical operations at the facility in which Petitioner is detained, outlines the numerous concrete steps the facility and its staff have taken in this regard. ECF No. 5-1 at 2–5. Specifically, the facility is currently operating below fifty percent capacity and following Centers for Disease Control and Prevention ("CDC") guidelines for detention facilities in relation to testing and preventative action. Id. at 2. This includes screening each detainee for disabilities, health issues, fever, respiratory illness, or prior exposure to COVID-19 when they first arrive at the facility; the isolation, testing, and treatment of those detainees who have symptoms of COVID-19; the transfer of those presenting severe symptoms to local hospitals; the placement of those who are asymptomatic but have been exposed to infected individuals in separate cohorted units where they receive daily monitoring for new symptoms for at least fourteen days; and COVID-19 testing for those who present fever, cough, joint pain, or altered breathing patterns. Id. at 2–3. Additionally, the facility has increased the frequency of cleaning and sanitization; provided additional soap for detainee use; supplied both soap and hand sanitizer to the medical clinic, provided COVID-19 education to inmates and staff; provided all detainees with masks; limited or eliminated entry into the facility of non-essential personnel, volunteers, and visitors; implemented temperature screening for all staff and vendors entering the facility; and taken steps to ensure detainees remain six feet apart including during meals and during bunk time. Id. at 3–5; ECF No. 5 at 11.

Based on these concrete steps taken by the facility and Petitioner's age and alleged symptoms, this Court finds that Petitioner is not entitled to release on his deliberate indifference to medical needs claim. As noted above, Petitioner has provided only a few allegations, raised for the first time in reply, that he has had any health issues at all, and those issues are not clearly symptoms of a potential COVID-19 infection. Petitioner sought help for these issues, and by his own admission was provided medication to aid him with his pain and any potential fever. Aside from these symptoms, Petitioner is an otherwise healthy thirty-one year old, and he has failed to identify any health issues or other factors which would place him at high risk of serious complications were he to contract COVID-19. Thus, this Court finds that Petitioner has failed to show that either the facility or its staff have been deliberately indifferent to either his specific medical needs or the threat posed by COVID-19. *See, e.g., Daniel R.-S.*, 2020 WL 2301445 at *5–6 (deliberate indifference not shown where concrete steps were taken to alleviate COVID-19 risk and Petitioner was not in an identifiable high risk group); *Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *3 (D.N.J. Apr. 21, 2020); *Emerson O.C.-S. v. Anderson*, No. 20-3774, 2020 WL 1933992, at * 6 (D.N.J. Apr. 22, 2020).

Petitioner has similarly not shown that he has been subject to punitive conditions which would violate his right to due process. As detailed above, Petitioner is legally and properly detained at the facility pursuant to 8 U.S.C. § 1226(a), has been afforded both a bond hearing and a bond redetermination hearing, and has not shown that the denial of bond in any way violated due process. The Government therefore clearly has a legitimate interest in detaining him pending the conclusion of his removal proceedings. *See Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690–91. In light of the significant steps the facility has taken to alleviate the danger posed to Petitioner and others by COVID-19 in accordance with guidance provided by the CDC, this Court likewise finds that the current conditions in the facility

are not excessive in relation to that interest, nor are they arbitrary or purposeless – they have been specifically tailored to the threat posed by COVID-19.  As Petitioner has not otherwise shown an express intention on the part of the facility or its staff to punish him, he has failed to show that he has been exposed to unconstitutional conditions of confinement. *See, e.g., Stevenson v. Carroll*, 495 F.3d 62, 67–68 (3d Cir. 2007); *Daniel R.S.*, 2020 WL 2301445 at *7.  Accordingly, because Petitioner has not shown that the facility and its staff were deliberately indifferent to his medical needs, and has likewise not shown that his conditions of confinement amount to unconstitutional punishment, Petitioner has failed to show any valid basis for habeas relief, and his petition is therefore denied without prejudice.[3]

**III. CONCLUSION**

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **DENIED WITHOUT PREJUDICE**.  An appropriate order follows.

**DATE**:  June 17, 2020

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**CLAIRE C. CECCHI, U.S.D.J.**

---

[3] Petitioner did not file a motion seeking either a temporary restraining order, preliminary injunction, or order to show cause in this matter.  Instead, he included a request for injunctive and declaratory relief in his complaint and attached proposed forms of order for an order to show cause and temporary restraining order. ECF No. 1 at 12–13.  Petitioner's request for injunctive and declaratory relief is denied without prejudice as Petitioner is not entitled to relief on his underlying claims and has failed to show a likelihood of success on the merits for the reasons discussed above. *See, e.g.*, *Nohasses G.C. v. Decker*, No. 20-4653, 2020 WL 2507775, at *12 (D.N.J. May 15, 2020) ("Because the underlying Petition is denied, the accompanying Motion for an order to show cause with temporary restraints is DENIED.").